# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| RAUL ZAVALA, § | |
|     Plaintiff, § | |
| § | |
| v. § | No. 3:11-CV-1888-BF |
| § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
|     Defendant. § | |

## MEMORANDUM OPINION AND ORDER

This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Raul Zavala ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court considered Plaintiff's Brief, filed on December 21, 2011, Defendant's Brief, filed on January 13, 2012, and Plaintiff's Reply Brief, filed on January 27, 2012. The Court reviewed the record in connection with the pleadings. For the following reasons, the final decision of the Commissioner is **REVERSED** and **REMANDED**.

## Background[1]

**Procedural History**

Plaintiff filed applications for Titles II and XVI benefits on January 29, 2009, alleging a disability onset date of January 1, 2009 due to a back injury. Tr. 14, 107-08, 110-15. These applications were initially denied by the Commissioner, and again upon reconsideration. Tr. 48-53, 65-70. Plaintiff requested a hearing, which was held on January 6, 2010 in front of an Administrative Law Judge ("ALJ"). Tr. 14, 26-47. At the hearing, Plaintiff and a Vocational Expert

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

("VE") testified. *Id.* The ALJ issued an unfavorable decision on February 1, 2010, denying both of Plaintiff's applications. Tr. 11-25. Plaintiff filed a timely request with the Appeals Council to review the ALJ's decision. Tr. 9. The Appeals Council declined Plaintiff's request for review on June 15, 2011. Tr. 1. Thus, the ALJ's decision became the final decision of the Commissioner, from which Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

**Plaintiff's Age, Education, and Work Experience**

Plaintiff was born on March 1, 1953. Tr. 116. He was fifty six years old on his alleged onset date and fifty seven years old at the time of the hearing. *Id.* Plaintiff has a tenth grade education and he has never obtained any subsequent vocational training. Tr. 30, 137.

Plaintiff failed to return his background questionnaire and work history. Tr. 29. However, Plaintiff testified that he worked in 2006 as a material handler and machine operator until he was incarcerated. Tr. 20-21, 30-31, 129, 137. Though he was temporarily employed in February 2008, he earned less than $2000 in 2008 and less than $500 in 2009. Tr. 116. Since then, he has had no income outside of $200 a month in food stamps. Tr. 31. As such, the ALJ found that Plaintiff's earnings had not been high enough to meet the standard for substantial gainful activity. Tr. 16.

**Plaintiff's Medical Evidence**

In May 2008, before Plaintiff's alleged disability, the Texas Department of Criminal Justice ("the Department") restricted Plaintiff to not bending at the waist, repetitively squatting, climbing, or working around machines with moving parts while performing his responsibilities at the Department. Tr. 203. In July 2008, however, Hedrick Health Systems found no evidence of a fracture or subluxation in the Plaintiff's back. Tr. 202. In August 2008, the Health Service Archives first recorded Plaintiff's back problems and leg swelling. Tr. 191, 197.

On March 18, 2009, after the alleged onset of disability, Dr. Cheatham of Premier Medicare found a moderate degree of degenerative disc disease ("DDD")[2] as well as extensive varicosities. Tr. 204, 206. Though Plaintiff's DDD produced constant pain that increased with activity, Plaintiff was still able to walk two blocks, stand for one hour, sit for twenty minutes, lift fifteen pounds, do light housework, cook, and do laundry. Tr. 205. On March 26, 2009, Dallas Regional Medical Center ("Dallas Regional") diagnosed Plaintiff with chronic back pain, but noted an absence of "severe pain." Tr. 210. On April 7, 2009, Dallas Regional diagnosed a small hernia in Plaintiff's groin and prescribed hydrocodone, which Plaintiff continued to take. Tr. 219. At this time, Plaintiff was instructed to continue normal activities without lifting more than ten pounds. Tr. 219.

On May 6, 2009, Dr. Minnigerode performed a Physical Residual Functional Capacity Assessment ("RFC"). Tr. 227-34. This RFC determined that Plaintiff could occasionally lift fifty pounds and stoop; frequently climb, balance, kneel, crouch, crawl, or lift twenty five pounds; stand, walk, or sit about six hours in an eight-hour workday; and push or pull an unlimited amount. Tr. 227-31. Additionally, Plaintiff had no manipulative, visual, communicative, or environmental limitations. *Id.* Dr. Minnigerode also concluded that, though Plaintiff was credible for his varicose veins and back pain, Plaintiff mostly alleged possible future problems instead of current hardship and was "up and about" all day. Tr. 232. As such, Dr. Ligon, a State Agency Medical Consultant ("SAMC") reviewing the RFC, determined Plaintiff's allegations were not supported by the medical evidence. Tr. 238.

On July 28, 2009, Plaintiff's pain was evaluated by East Dallas Health Center. Tr. 244. A nurse determined that Plaintiff had constant back pain with a "pain severity" of "eight" and constant

---

[2]DDD is a condition that weakens the spinal discs that cushion between the bones of the spine. Tr. 421.

groin pain with a "pain severity" of "seven."[3] Tr. 244.

On August 7, 2009, Parkland Health & Hospital System ("Parkland") performed a lumbar spine MRI that found degenerative endplate changes and three mild disk bulges in Plaintiff's back. Tr. 308. On November 23, 2009, Parkland's doctors scheduled surgery for Plaintiff's hernia for December 10, 2009, but surgery never took place. Tr. 304-06, 317. That same day, Parkland also recorded that Plaintiff had no present anemia. Tr. 304.

Throughout all of the examinations, Plaintiff had normal gait, full range of motion in his extremities, normal reflexes, and normal motor strength in his hands. Tr. 18-19, 206-07, 210, 216, 241, 249, 274, 285, 298, 333-34, 370, 382, 396, 402-03, 418, 427.

**Medical Evidence Submitted after the ALJ Decision**

On May 16, 2011, Plaintiff submitted new evidence to the Appeals Council containing medical records from March 22, 2010 to February 24, 2011. On March 22, 2010, Parkland assessed Plaintiff's pain as a "seven" and first noted the presence of hepatitis. Tr. 317-18, 327. Though the record shows that Plaintiff's anemia was recorded on August 8, 2009, the March 22, 2010 visit stated that the Plaintiff was "not aware of anemia." Tr. 294, 317. In July 2010, Plaintiff's pain receded to a "six" which was relieved by lying down, but prevented him from sitting. Tr. 333, 341, 348. On July 30, 2010, Plaintiff was prescribed gabapentin to prevent leg discomfort while he was attempting to sleep. Tr. 349. Additionally, the doctor changed Plaintiff's pain relieving medication from hydrocodone to tramadol and methocarbamol to prevent the risk of liver problems. Tr. 349. On December 14, 2010, Plaintiff's pain severity dropped again to a "five," Tr. 386, but increased

---

[3]No pain severity scale was given. Tr. 244. However, later medical records from Parkland suggest a scale of zero to ten was used. *See* Tr. 395 (recording Plaintiff's pain as a "7-8/10" on January 5, 2011, after the ALJ hearing).

4

to a "7-8/10" on January 5, 2011. Tr. 395. On February 24, 2011, Plaintiff reported a recent episode of back pain that had a severity of "six," but did not cause weakness. Tr. 417.

The Appeals Council denied Plaintiff's request for review, finding that the ALJ had decided Plaintiff's case through February 1, 2010 and this new information did not require redetermination. Tr. 2.

**Plaintiff's Testimony at the Hearing**

Plaintiff testified on his own behalf at the hearing held on January 6, 2010. Tr. 30-44. He stated that he received $200 a month in food stamps, but had no other income. Tr. 31. He also stated that he was unable to sit for more than fifteen or twenty minutes at a time due to his back pain. Tr. 31. Plaintiff described his back pain as constant, located in his lower back, and restrictive. Tr. 34. He claimed his back pain and hernia made him lose control of his bowel movements, and that he was only able to sit, stand, or walk for about twenty minutes at a time. Tr. 35-36. He also stated that he had leg pain, trouble kneeling, and trouble bending due to blood clots in his legs. Tr. 36-37. Though doctors instructed him to take physical therapy, Plaintiff testified the $350 cost prohibited him from following their advice. Tr. 40.

Plaintiff stated that in the past fifteen years he had performed work similar to construction, lifting rocks from the airport, putting up sheet rock, painting, and cutting grass, but he stopped working in 2006 when he served a ten month sentence for a domestic crime. Tr. 31-32, 38. Plaintiff went on to describe a job he had unloading a truck for four to six hours a day with the heaviest lifting being about twenty pounds. Tr. 44. At the hearing, he testified that he would not be able to perform those jobs multiple days in a row and that he was only able to lift fifteen pounds. Tr. 32. Plaintiff claimed that even on hydrocodone he would not be able to do his past work because his

vision was bad and hydrocodone made him drowsy. Tr. 35. When asked if he tried to get a job after being released from prison, Plaintiff stated that he "walked up and down the alley trying." Tr. 41.

Plaintiff said he spent his days cleaning his house, vacuuming, and cutting the grass, but his back pain prevented him from sleeping more than thirty minutes at a time, driving, or shopping for groceries. Tr. 32-33. Plaintiff also stated that he took the wallpaper off his sister's house, painted the floor boards, and painted the walls during the day and had been doing that for the whole year. Tr. 40.

**The VE's Testimony at the Hearing**

A VE, Ms. Tammie Donaldson, also testified at the hearing regarding Plaintiff's past work and jobs available in the national economy. The VE testified that, though Plaintiff's work history gave "very little detail," Plaintiff's recorded work in 2000 and 2006 as a material handler and machine operator of grocery bags were both light work as performed. Tr. 43. The VE then examined three hypotheticals posed by the ALJ. Tr. 44.

The first hypothetical assumed a person could "lift or carry 50 pounds occasionally and 25 pounds frequently, sit six hours per day and stand or walk six hours, and occasionally stoop." Tr. 44. To this, the VE testified that both of Plaintiff's past work as a machine operator and material handler could be performed by this person. Tr. 44.

The second hypothetical assumed a person "was limited to lifting or carrying 20 pounds occasionally and 10 pounds frequently, sitting six hour [sic] per day and standing or walking six hours, and could occasionally climb and stoop." Tr. 44. Likewise, the VE indicated both the machine operator and material handler past work could be performed by this person as well. Tr.

45.

Finally, the third hypothetical assumed a person "was limited to lifting or carrying 15 pounds, and could only walk twenty minutes, stand fifteen minutes, and sit fifteen minutes, and could not complete an eight hour day on a consistent basis, and occasionally stoop, kneel, crouch, and crawl." Tr. 45. The VE testified that the person described in the third hypothetical would not be able to perform competitive work. Tr. 45.

On cross-examination, the VE was presented with a hypothetical similar to the second hypothetical, except additionally requiring "access or immediate access to the bathroom, and an unscheduled break for five minutes every hour." Tr. 46. The VE testified that "unscheduled breaks alone would preclude competitive work employment," and that he could not answer the hypothetical as to the immediate access to the bathroom. Tr. 46.

Cross-examination presented the VE with one final hypothetical that assumed a person similar to the third hypothetical, but with the ability to complete an eight hour day and requiring the ability to change positions at will. Tr. 46. The VE decided that this hypothetical person would not be able to perform Plaintiff's past work, but would still be able to work in other jobs. Tr. 47.

**The Decision**

The ALJ analyzed Plaintiff's claim pursuant to the familiar five-step sequential evaluation process.[4] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2009. Tr. 16. At step two, the ALJ found that the

---

[4] (1) Is the claimant currently working? (2) Does he have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent him from performing his past relevant work? (5) Does the impairment prevent him from doing any other work? 20 C.F.R. §§ 404.1520, 416.920.

medical evidence established the following severe impairments: degenerative disc disease and varicose veins.[5] *Id.* In relation to Plaintiff's hernia, the ALJ cited *Stone* and stated that the Plaintiff's "hernia surgery has been less than one year ago and does not meet the durational requirements; this condition is not, therefore, a severe impairment." *Id.* The ALJ also noted that the hernia only restricted Plaintiff from lifting more than ten pounds.[6] *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Before proceeding to step four, the ALJ assessed Plaintiff's RFC. The ALJ determined that though Plaintiff had an impairment that could reasonably be expected to cause his symptoms, Plaintiff's statements about the limiting effect of those symptoms were not credible. Tr. 20. As such, the ALJ determined that Plaintiff retained the following RFC: Plaintiff "can stand/walk for up to six hours a day, with occasional climbing and stooping." Tr. 19.

At step four, the ALJ determined that Plaintiff was capable of performing his past relevant work as a material handler and machine operator of grocery bags as he had performed them. Tr. 20-21. Hence, the ALJ did not need to reach step five and concluded Plaintiff was not disabled within the meaning of the Act for the relevant time period.[7] Tr. 21.

## Standard of Review

---

[5] Plaintiff's hepatitis and anemia were not presented until after the ALJ's decision.

[6] The ALJ undoubtedly meant "more than ten pounds" rather than "up to ten pounds." *Compare* Tr. 18, *with* Tr. 277.

[7] The relevant time period is Plaintiff's alleged onset date, January 1, 2009, through the date of the decision, February 1, 2010.

To be entitled to social security benefits, a plaintiff must prove that he is disabled for the purpose of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of

performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment. *Greenspan*, 38 F.3d at 236. Rather, the court scrutinizes the record to determine whether substantial evidence is present. *Id.*

## Issues

The dispositive issue is whether the ALJ committed reversible legal error by failing to consider if Plaintiff's hepatitis and anemia were severe impairments during the insured period and by failing to apply the severity standard set out in *Stone v. Heckler* to Plaintiff's hernia at step two of the sequential evaluation of disability. *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985).

## Analysis

### Whether the ALJ's Severity Standard for Step Two Was Legally Erroneous

Plaintiff contends that the ALJ failed to apply the severity standard set forth in *Stone* when

evaluating the Plaintiff's anemia, hepatitis, and hernia at Step Two of the sequential evaluation process and thus the case must be remanded to the Commissioner for reconsideration based on legal error. Pl.'s Br. at 7, 10; *Stone*, 752 F.2d at 1104-05. Under the regulations, a disability requires an impairment so severe that it impacts the claimant's ability to work and the impairment must last or be expected to last at least twelve months. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.908. Under *Stone*, a *de minimus* standard is used for determining an impairment's impact:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Stone*, 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984) and citing *Davis v. Heckler*, 748 F.2d 293, 296 (5th Cir. 1984)). To ensure that such a *de minimus* standard is being used, the Fifth Circuit presumes legal error if the ALJ does not reference *Stone* or another opinion of the same effect. *Id.* at 1106.

**Plaintiff's Hepatitis and Anemia**

First, Plaintiff claims that the failure to consider his hepatitis and anemia and failure to find that they were severe created reversible error. Pl.'s Br. at 10, 12. Though most of the evidence about the hepatitis and anemia were submitted after the hearing, the statute allows the Court to remand a case "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Remand is only warranted, however, where it is reasonably possible that the new evidence would have changed the ALJ's decision if the new evidence had been before him. *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985). Because the ALJ only decided Plaintiff's case through February 1, 2010, the new evidence about Plaintiff's hepatitis and anemia must be material, relevant

to the time period before February 1, 2010, and have been omitted for good cause. Tr. 2. *See* 42 U.S.C. § 405(g).

Though Plaintiff argues that his anemia was diagnosed on August 8, 2009, Plaintiff did not present his anemia at the hearing, and the record shows that it was not until March 22, 2010, after the ALJ's decision, that the Plaintiff became aware of his anemia. *Compare* Pl.'s Br. at 12 (citing Tr. 294's record of Plaintiff's anemia on August 8, 2009), *with* Tr. 317 (stating that on March 22, 2010, Plaintiff was "not aware of anemia"). Plaintiff's anemia was only referenced once before the ALJ hearing and none of the new medical records suggest that the anemia impaired Plaintiff's ability to work. Tr. 294. Additionally, "the lone reference in the record to an apparently moderate and correctable [] impairment is not sufficient to raise a suspicion that would require the ALJ to investigate beyond [Plaintiff]'s stated claim." *Gentry v. Barnhart*, No. 05-30266, 141 F. App'x. 316, 317-18 (5th Cir. July 28, 2005).

Likewise, there is no record of Plaintiff's hepatitis until March 22, 2010. Tr. 319. Plaintiff also fails to allege in either of his briefs any evidence that the hepatitis affected his ability to work. *Cf.* Pl.'s Br. at 21-13; Pl.'s Reply Br. at 5. Instead, Plaintiff makes only empty allegations that he had hepatitis and the ALJ's decision should have taken that into account "in combination with Zavala's other impairments." Pl.'s Br. at 12.

Thus, the ALJ did not err by not examining conditions that Plaintiff did not claim as severe impairments during the relevant time frame, January 1, 2009 through February 1, 2010. Tr. 2. Additionally, it is not reasonably possible that the new evidence would have changed the ALJ's decision. *See Johnson*, 767 F.2d at 183.

**Plaintiff's Hernia**

Second, Plaintiff claims that the severity standard that the ALJ applied to his hernia was

ambiguous and warrants remand. Pl's Br. at 7-10. The ALJ's decision must apply the appropriate standard when evaluating an impairment's severity. *Stone*, 752 F.2d at 1101, 1106. To satisfy this, the ALJ's decision must contain a citation to *Stone* and an indication that the appropriate standard of severity was used. *Hampton*, 785 F.2d at 1310. When *Stone* is referenced, remand is only warranted "where there is no indication that the ALJ applied the correct legal standard." *Hampton v. Bowen*, 785 F.2d 1308, 1310 (5th Cir. 1986). Where such an error is found, however, the court has no discretion to determine whether such an error is harmless; "[u]nless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106.

To decide if the correct severity standard was actually implemented, courts examine the ALJ's description of the standard and whether the ALJ has referenced *Stone*. *See Sanders v. Astrue*, No. 3:07-CV-1827-G, 2008 WL 4211146 at *7 (N.D. Tex. Sept. 12, 2008); *White v. Astrue*, No. 4:08-CV-415-Y, 2009 WL 763064 at *10 (N.D. Tex. Mar. 23, 2009). In *Sanders*, the court determined that the ALJ, defining a condition as not severe so long as it has "no more than a minimal effect" on the plaintiff's ability to work, used an incorrect standard because such wording was not consistent with the standard set forth in *Stone*. *Sanders*, 2008 WL 4211146, at *7. The court noted that "[u]nlike the standard applied by the ALJ, *Stone* provides no allowance for a minimal interference on a claimant's ability to work. . . . This difference, coupled with the ALJ's failure to cite *Stone* or a similar opinion, leads the Court to conclude that the ALJ applied an incorrect standard of severity at step 2." *Id.* In *White*, though the same wording was used to describe the severity standard, the court found no legal error because "the ALJ who considered White's claims specifically cited *Stone* in addressing the issue of severity. This distinction is significant and does not give rise to the presumption of legal error that required remand in *Sanders*." *White*, 2009 WL 763064, at *9-10.

13

Here, the ALJ specifically referenced *Stone* when determining that Plaintiff's hernia was not a severe impairment. Tr. 18. The ALJ stated:

> The undersigned finds that the claimant's hernia surgery has been less than one year ago and does not meet the durational requirements; this condition is not, therefore a severe impairment. (20 C.F.R. §§ 404.1520 and 416.923 and *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). The claimant's only restriction concerning his hernia was lifting up to ten pounds. (Exhibit 10F/23).

Tr. 18. Though the wording of the ALJ's severity standard is similar to the incorrect standard found in *Sanders*, the court is not required to presume error because, like in *White*, the ALJ specifically cited *Stone* when addressing the severity of the hernia. Tr. 18; *see also White*, 2009 WL 763064, at *10; *cf. Sanders*, 2008 WL 4211146, at *7. Nonetheless, the ALJ committed legal error. The ALJ noted that Plaintiff's hernia restricted his ability to lift more than ten pounds. Tr. 18. The ALJ's awareness of this restriction suggests that a "minimal effect" standard was used instead of the standard in *Stone*, which does not allow *any* interference on a claimant's ability to work. *Sanders*, 2008 WL 4211146, at *7 (referencing *Stone*, 752 F.2d at 1101).

Additionally, the ALJ based his severity determination on the duration requirement of step two and the mistaken belief that surgery had been performed on Plaintiff's hernia.[8] Tr. 18. At step two, an impairment is not considered disabling unless it is severe and satisfies the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). While duration does affect whether an impairment is

---

[8]Plaintiff's medical records show his hernia surgery was scheduled for December 10, 2009, a month before the ALJ hearing. Tr. 304-06, 317. Though this surgery never took place, the ALJ decided in part on the mistaken belief that Plaintiff's hernia had been treated. Tr. 18. In the decision, the ALJ concluded that because the hernia had been treated and did not "meet the durational requirements; this condition [was] not, therefore, a severe impairment." Tr. 18.

14

considered disabling, duration is not mentioned as a factor in the regulation's definition of severity.[9] Even the more encompassing *Stone* standard adopted by the Fifth Circuit lacks any reference to a required duration. *See supra* p. 10. Therefore, the Court is reluctant to decide that the duration requirement can be used to dispose of severity. Additionally, this Court has not found and Defendant fails to cite any Fifth Circuit case law where an ALJ found an impairment not severe because it did not meet the duration requirement.

Therefore, the ALJ did not use the correct severity standard under *Stone* because he improperly relied on the hernia's surgery and duration to conclude it was not severe despite the restriction it placed on Plaintiff's ability to lift more than ten pounds. As such, the ALJ committed reversible legal error in determining the severity of Plaintiff's hernia, and this case should be remanded for further consideration.

## **Conclusion**

Because remand is required pursuant to the ALJ's legal error at step two, the Court will not consider the remaining issues for review. However, upon remand, the Commissioner should ensure

---

[9] 20 C.F.R. § 404.1520(c) defines an impairment as severe when it "significantly limits your physical or mental ability to do basic work activities."

that he properly considers such issues.

It is therefore ORDERED, ADJUDGED AND DECREED that the Commissioner's decision is REVERSED AND REMANDED.

SO ORDERED, July 6, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE